UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MARCEL ARLENE LARSSON,<br><br>                Plaintiff,<br>    v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security<br><br>                Defendant. | Case No. 2:16-CV-01646-TLF<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

      Plaintiff has brought this matter for judicial review of defendant's denial of her applications for Social Security benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court finds that defendant's decision to deny benefits should be reversed pursuant to the reasoning of *Vertigan v. Halter,* 260 F.3d 1044 (9th Cir. 2001), and that this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

      On May 16, 2013, the plaintiff filed an application for Title II disability insurance benefits; on August 9, 2013 she filed an application for Title XVI Supplemental Security Income (SSI) benefits. The plaintiff alleges that she was first injured in 2008. AR 64. She experienced back pain and other symptoms, and pursued treatment for her medical condition, which her treating physicians have addressed through drugs, injections, and surgical intervention, during the years 2008-2014. AR 64-65, 77-79, 497-520, 532-544. The plaintiff alleges that she became

ORDER REVERSING AND REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS - 1

disabled due to a medical condition that causes musculoskeletal pain and due to migraine headaches, beginning February 1, 2012. AR 212-222. The plaintiff has acquired sufficient quarters of coverage to remain insured through June 30, 2017. Dkt. 9, Administrative Record (AR) 26.

Both of the plaintiff's applications were denied on initial administrative review (October 14, 2013) and on reconsideration (March 21, 2014). *Id.* at 90-140, 144-165. The plaintiff appealed and a hearing was held before an administrative law judge (ALJ) on September 23, 2014. The plaintiff testified at the hearing as did a vocational expert, Ms. Jones. *Id.* at 40.

In a written decision dated March 20, 2015, the ALJ determined that the criteria of steps one and two were satisfied, but found that the criteria of steps three, four and five were not. AR 28-34. Regarding step three of the analysis, the ALJ determined that the plaintiff's degenerative disc disease did not satisfy the criteria for the relevant category 1.04 within the Social Security Administration's Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1, "because there is no evidence of nerve root compression" and other medical indicia that would be necessary for a determination under listing 1.04. AR 9.

The ALJ also determined that plaintiff's headaches did not meet the criteria for disability under step three because she never missed work as a result of a headache, and her headaches appeared to be effectively controlled with medication. AR 31.

The ALJ found that plaintiff could perform past work as an insurance agent (step four) and other work that exists in significant numbers in the national economy (step five). AR 33-34. Because the ALJ determined that the plaintiff's back condition did not satisfy the indicia of listing 1.04, and that plaintiff's headaches did not constitute a disability, and that plaintiff was capable of making a successful adjustment to previous work, the ALJ concluded that she was not

disabled. AR 29-34. The ALJ also made a finding as to step five -- that the plaintiff is capable of making a successful adjustment to other, future work that exists in significant numbers in the national economy. AR 34. In conclusion, the ALJ denied the plaintiff's applications for benefits. AR 34.

Plaintiff's request for review was denied by the Appeals Council on August 25, 2016, making the ALJ's decision the final decision of the Commissioner. The plaintiff then appealed in a complaint filed with this Court on October 21, 2016. AR 1-6; Dkt. 1; 20 C.F.R. § 404.981, § 416.1481.

The plaintiff seeks reversal of the ALJ's decision and remand for an award of benefits, or in the alternative for further administrative proceedings, arguing the ALJ erred:

(1) in evaluating the medical evidence;

(2) in discounting plaintiff's credibility;

(3) in assessing plaintiff's residual functional capacity;

(4) in finding plaintiff could perform her past relevant work; and

(5) in finding plaintiff could perform other jobs existing in significant numbers in the national economy.

For the reasons set forth below, the Court finds that the ALJ erred in three respects. First, the ALJ erred by not expanding the inquiry and the record to consider additional information about the circumstances of the plaintiff's disc fusion surgery that occurred in December of 2014, and therefore also erred in finding that the plaintiff's back condition did not fit the criteria for a disability under steps three, four, and five. Second, the ALJ erred by failing to consider the evidence in the record regarding the types of medication that the plaintiff has been prescribed, and the possible effects and interactions of those medications. Third, the ALJ misapprehended

the quantity and quality of medical diagnostic and treatment evidence, and misapplied the Code of Federal Regulations (CFR) describing the variations that occur in musculoskeletal conditions, and the wide range of descriptions of spinal diseases and conditions in the CFR. The nature of the plaintiff's back disease or condition that has been diagnosed by doctors during the longitudinal history of her condition is somewhat complicated, and the ALJ erred by failing to follow the CFR and by failing to fully consider longitudinal evidence that exists in the record as a whole. The Court agrees, however, with the ALJ that the plaintiff's alleged headache condition was not disabling. For the reasons set forth below, the Court finds that the decision to deny benefits should be reversed and that this matter should be remanded for further administrative proceedings.

## DISCUSSION

The Commissioner's decision will be upheld if the Commissioner has applied proper legal standards and there is substantial evidence in the record as a whole to support the decision. *Webb v. Barnhart,* 433 F.3d 683, 685-86 (9th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted).

Substantial evidence means the Commissioner's determination is supported by more than a scintilla, although less than a preponderance of the evidence. *Richardson v. Perales, supra,* at 401; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). The Court reviews the administrative record as a whole and weighs evidence that supports the ALJ's conclusion along with the evidence that is contrary to the ALJ's conclusion. *Magallanes v. Bowen,* 881 F.2d 747, 750 (9th Cir. 1989).

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where

the evidence is inconclusive, "questions of credibility and resolution of conflicts are functions solely of the [ALJ]." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). If conflicting evidence is susceptible to more than one rational interpretation, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" medical opinions "falls within this responsibility." *Id.* at 603.

Where there is evidence that a plaintiff is attempting to carry on his or her normal life by doing chores at home, the Court recognizes that home activities are not easily transferrable to the workplace; at home it is more reasonable to take medication and frequently lay down and rest. *Reddick v. Chater, supra,* at 722. The plaintiff should not be penalized by negative inferences from such home-chores evidence during the social security medical evidence review for trying to preserve his or her dignity and undertake responsibilities at home. *Id.*

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can

1  only be rejected for specific and legitimate reasons that are supported by substantial evidence in
2  the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or
3  her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation
4  omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence
5  has been rejected." *Id*.

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31.

I. The five-step evaluation.

According to 42 U.S.C. § 423(d)(1)(A), a disability is present if the claimant is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520, § 416.920. If the claimant is found disabled or not disabled at any step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *Id.*

For the evaluation of steps one through four, the plaintiff bears the burden of proof. At step five, if there has not yet been a determination by the Commissioner, the burden shifts to the

Commissioner to show that the plaintiff is able to do other kinds of work. *Valentine v. Comm'r of Soc. Sec. Admin.,* 574 F.3d 685, 689 (9th Cir. 2009).

A. <u>Findings at Step Three</u>

    1. <u>There are significant material questions of fact regarding the treating doctors' opinions concerning physical conditions and impairments, and drugs that were prescribed to the plaintiff, before, during, and after the plaintiff's spinal fusion surgery in December 2014. A remand is necessary in order to resolve these questions of fact. In addition, there are mixed questions of law and fact concerning the description of plaintiff's medical condition, which must be carefully addressed on remand, considering longitudinal evidence in the record as a whole.</u>

The plaintiff's back condition was analyzed by the ALJ under 20 C.F. R. Part 404, Subpart P, Appendix 1, § 1.04[1]. The Court notes, however, that 20 C.F. R. Part 404, Subpart P, Appendix 1, § 1.00, Musculoskeletal System, is a category of disorders that includes many variations. The documentation that is necessary for an accurate assessment should be longitudinal, because it is often difficult to decide a claim based on a snapshot. *Id.,* § 1.00, Musculoskeletal System, H. 1, 2, and 4. The listings under this category are "only examples of common musculoskeletal disorders that are severe enough to prevent a person from engaging in gainful activity". *Id.* § 1.00, Musculoskeletal System, H.4. In addition, the treatment for musculoskeletal disorders may include pain management drugs that have side effects such as "drowsiness, dizziness, or disorientation, that compromise the individual's ability to function."

---

[1] Section 1.04 is the category that pertains to: "Disorders of the spine (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equine) or the spinal cord. With: A. Evidence or nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysethesia, resulting in the need for changes in position or posture more than once every 2 hours; or C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inadbility to ambulate effectively, as defined in 1.00B2b."

20 C.F. R. Part 404, Subpart P, Appendix 1, § 1.00, Musculoskeletal System, I.2; *Dunn v. Sullivan,* 962 F.2d 13 (9th Cir. 1992). Therefore, each case mush be considered on an individual basis, and include consideration of the effects of treatment on the individual's ability to function." *Id.,* § 1.00, Musculoskeletal System, I.2.

At step three of the process, the ALJ must evaluate the claimant's impairments to evaluate whether the claimant's condition meets, or is medically equal to any of the impairments listed in 20 C.F. R. Part 404, Subpart P, Appendix 1. 20 C.F.R § 404.1520(d), § 416.920(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1, describes impairments that are considered "severe enough to prevent a person from doing any gainful activity, regardless of his or her age, education, or work experience" and most of the impairments on the list are "permanent or expected to result in death." 20 C.F.R. § 404.1525(a),(c)(4), § 416.925(a),(c)(4).

If any of the claimant's impairments meets or medically equals a listed impairment, he or she is deemed disabled. *Id.* The burden of proof is on the claimant to establish he or she meets or equals any of the impairments in the Listings. *Tacket*, 180 F.3d at 1098. "A generalized assertion of functional problems," however, "is not enough to establish disability at step three." *Id.* at 1100 (citing 20 C.F.R. § 404.1526).

A mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508, § 416.908. It must be established by medical evidence "consisting of signs, symptoms, and laboratory findings." *Id.* An impairment, or combination of impairments, equals a listed impairment "only if the medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least equivalent in severity to the set of

medical findings for the listed impairment." *Id.*; *see also Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) ("For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.") (emphasis in original). However, "symptoms alone" will not justify a finding of equivalence. *Id.* The ALJ also "is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

The ALJ need not "state why a claimant failed to satisfy every different section of the listing of impairments." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding ALJ did not err in failing to state what evidence supported conclusion that, or discuss why, claimant's impairments did not meet or exceed Listings). This is particularly true where, as noted above, the claimant has failed to set forth any reasons as to why the Listing criteria have been met or equaled. *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (finding ALJ's failure to discuss combined effect of claimant's impairments was not error, noting claimant offered no theory as to how, or point to any evidence to show, his impairments combined to equal a listed impairment).

In this case, a treating physician (Dr. Wu Zhuge, MD) determined on April 15, 2014 that the plaintiff was suffering from a medical condition that was appropriate for a surgical procedure that would include a fusion of the spine. AR 497, 532. The plaintiff told her doctor, in June of 2014, that the surgery should be postponed because her home had caught fire. AR 511. The surgery took place in December 2014 – after the date of the hearing (September 23, 2014), but before the date of the ALJ's decision (March 20, 2015).

The ALJ's decision does not mention any of the evidence in the record concerning the reasons for the spinal fusion surgery. There are a number of reports in the record that show the plaintiff's reports of extreme pain, and also show the different types of medications that physicians prescribed to the plaintiff, for pain, anxiety, sleeplessness, and other symptoms that led to the recommended spinal fusion surgery. AR 444. And there is no evidence in the record concerning the plaintiff's post-hospitalization recovery from surgery, or the patient's transition to day-to-day demands of life after recovery. The ALJ considered one surgical report about the plaintiff's surgery and hospital stay (Swedish Hospital, December 8, 2014-December 11, 2014). AR 532-544.

The ALJ mentioned the report from Swedish Hospital concerning the immediate results of Ms. Larsson's spinal fusion surgery, and the ALJ did not consider additional information about the opinions and diagnostic evaluations conducted by specific physicians who conducted surgery and any pre-operative or post-operative assessments. AR 30. The ALJ noted that "In December 2014, the claimant underwent an L4-S1 anterior lumbar interbody fusion with anterior flexion (15F2). However the record does not contain any follow up examinations to determine whether the surgery was successful." *Id.*

An ALJ has a duty to inquire and develop the record, even when the claimant is represented by counsel. *DeLorme v. Sullivan,* 924 F.2d 841, 849 (9th Cir. 1991). It is not necessary for the ALJ to find an ambiguity or inadequacy in the record before the duty to inquire is triggered. *McLeod v. Astrue,* 640 F.3d 881, 885 (9th Cir. 2011) (as amended). If there are questions about a doctor's opinions, the ALJ has a duty to be thorough and conduct an appropriate inquiry. *See Smolen v. Chater,* 80 F.3d 1273, 1288 (9th Cir. 1996). The fusion surgery is a significant medical event that occurred in December of 2014 – after the hearing date

but before the ALJ issued her decision – that indicates the plaintiff's impairments may be far more severe than the ALJ found, and therefore that triggered the ALJ's duty to develop the record.and explore this issue more more fully. The ALJ's failure to do so constitutes reversible error.

    2.    <u>The ALJ erred by making credibility determinations based on less than a scintilla of evidence and by failing to consider the plaintiff's prescription medications and potential side effects and interactions. This is a mixed question of law and fact, that must be carefully addressed on remand.</u>

In addition, the ALJ made credibility determinations that were entirely inconsistent with uncontroverted medical evidence, and plaintiff's testimony. The ALJ's decision concerning credibility ignored overwhelming evidence in the record as a whole, concerning pain and medication effects, and the ALJ did not consider the plaintiff's difficulty coping with side effects of plaintiff's various prescribed medications. Physical reactions that occur after taking medication for a musculoskeletal condition – such as dizziness, sleepiness, cognitive impairment -- are part of the assessment of whether the plaintiff's condition is so severe that she is disabled and cannot work. 20 C.F. R. Part 404, Subpart P, Appendix 1, § 1.00, Musculoskeletal System, I.2. In this case, the plaintiff was taking a number of different medications prescribed at various times by her treating physicians, including: OxyContin and Oxycodone (AR 425), Topiramate (AR 426), Nortiptyline (AR 425), Dicylomine (AR 423), Zolpidem (AR 541), and Gabapentin (AR 425). She testified that she experienced pain and severe side effects of medication such as not being lucid (AR 47), colon spasms (AR 67), blurred vision (AR 68), not being able to think clearly and losing the ability to articulate words (AR 69), sleeplessness (AR 71), gait problems (AR 73), slowness of thought and reaction (AR 75), inability to drive unless she stopped taking her medication (AR 47, 74-76), having a need to shift from sitting to standing and also lying down for minutes at a time due to constant pain in the back, legs, hips, thighs, and groin (AR 68-

70); using a walking stick because she could not afford to purchase a cane that had been prescribed (AR 71) and shifting the walking stick from one hand to the other because the imbalance causes pain and problems with mobility (AR 71-73).

The ALJ did not fully develop the record by making specific inquiries about the side effects or interactions that flow from the prescribed medications that the plaintiff was ingesting. The ALJ's decision does not mention the drug side effects of medication. These side effects certainly could affect the plaintiff's ability to work, and should have been analyzed as part of the decision-making process for steps three, four and five. This error concerns a mixed question of law and fact that should be carefully addressed by conducting an accurate assessment of the evidence on remand, and if necessarily to fully and fairly develop the evidence, expand the record. *See Vertigan v. Halter,* 260 F.3d 1044 (9th Cir. 2001) ("A patient may do these activities *despite* pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved. As such, we find only a scintilla of evidence in the record to support the ALJ's finding that she lacked credibility about her pain and physical limitations. As revealed by the medical reports, [the plaintiff's] constant quest for medical treatment and pain relief refutes such a finding.")

II. Remand for Further Administrative Proceedings

The Court is authorized to reverse with, or without, a remand. *Treichler v. Comm'r of Soc. Sec. Admin.,* 775 F.3d 1090, 1099 (9th Cir. 2014). The district court has discretion to reverse and remand for an award of benefits without a rehearing, and credit evidence that was rejected by the ALJ. 42 U.S.C. § 405(g); *Garrison v. Colvin,* 759 F.3d 995, 1020-21 (9th Cir. 2014). A reversal and remand for award of benefits is appropriate if the ALJ failed to provide legally sufficient reasons for rejecting evidence, there are no outstanding issues that must be resolved, and the record is clear that if the rejected evidence is taken into consideration there should be a

finding of disability. *Burrell v. Colvin,* 775 F.3d 1133, 1141-42 (9th Cir. 2014); *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citations omitted). However, if the court determines that the record as a whole creates a serious doubt as to whether the plaintiff is disabled within the meaning of the Social Security Act, then the court should remand. *Burrell v. Colvin, supra,* at 1141.

Because issues still remain in regard to issues of fact pertaining to plaintiff's medical status and the unresolved factual issues would necessarily have an impact on the analysis of step three (how plaintiff's medical condition compares to the relevant listings), step four (plaintiff's RFC), and step five (her ability to perform other jobs exiting in significant numbers in the national economy), the Court has determined that a remand for further consideration of those factual and legal issues is warranted.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ improperly determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is REVERSED and this matter is REMANDED for further administrative proceedings.

On remand, the ALJ should develop the record as necessary, consider and reevaluate the opinions of Dr. Wu Zhuge, MD, and review the effects of the many drugs that have been, and are currently, prescribed for the plaintiff's condition. In addition, the ALJ should review the broad range of musculoskeletal impairments listed in 20 C.F.R § 404.1520(d), § 416.920(d); Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1.

Dated this 1st day of June, 2017.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge